***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Phillips.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff alleges that defendant CMH Homes, Inc., (hereafter "CMH") is his statutory employer under the provisions of N.C. Gen. Stat. § 97-19.
2. Defendant CMH's workers' compensation carrier on the risk in June 2007 was XL Insurance Company.
3. The following exhibits were received into evidence:
 a. Stip. Ex. #1: Medical Records
 b. Stip. Ex. #2: IC Forms
 c. Stip. Ex. #3: Corporate Exhibits
 d. Plaintiff's Ex. #1: Affidavit of Ben Harris
 e. Plaintiff's Ex. #2: Discovery Responses *Page 3 
 f. Plaintiff's Ex. #3: Discovery Responses
 g. Plaintiff's Ex. #4: Discovery Responses
 h. Plaintiff's Ex. #5: Contractor's License
 i. Plaintiff's Ex. #6: Plaintiff's Work History
 j. Plaintiff's Ex. #7: Corporate Vehicles
 k. Plaintiff's Ex. #8-#18: Photos
 l. Plaintiff's Ex. #19: Corporate Tools
 m. Plaintiff's Ex. #20: Corporate Letter
 n. Plaintiff's Ex. #21: Transportation Certification Dated May 4, 2007
 o. Plaintiff's Ex. #22: Discovery Responses
 q. Plaintiff's Ex. #24: Discovery Responses
 r. Depositions: Dr. Gary Poehling, Dr. Jason Stopyra, Plaintiff, Dante Martinez, Misty Sapp, Roger Spencer, Ashley Heath, Aureo Nava, Joel Martinez and Lisa Toney
4. The issues to be determined by the Commission are as follows:
 a. On June 27, 2007, was plaintiff an employee of defendant Emerson Freight Systems, Inc., (hereafter "Emerson Freight") or Phillip Emerson?
 b. On June 27, 2007, did either of the defendants have any employees and, if so, how many?
 c. On June 27, 2007, did either of the defendants have in force a workers' compensation insurance policy or qualify as self-insured, as required by N.C. Gen. Stat. § 97-93? *Page 4 
 d. On June 27, 2007, did plaintiff sustain a compensable injury by accident arising out of and in the course of his employment, and, if so, to what benefits is he entitled?
 e. On June 27, 2007, under N.C. Gen. Stat. § 97-19, was defendant CMH a principal contractor that sublet the moving and installation of a new modular home to Phillip Emerson or Emerson Freight without requiring from either proof of a valid workers' compensation insurance policy covering its employees or qualification as a self-insured?
 f. What is plaintiff's average weekly wage and resulting compensation rate?
 g. Is plaintiff entitled to a 10% increase in disability compensation under N.C. Gen. Stat. § 97-12(3) for defendant Emerson Freight's willful failure to comply with 29 CFR 1926501(b)(13) and 29 CFR 1926.503(b)(1) and 29 CFR 1926.51(a)(1)?
 h. Has defendant CMH defended plaintiff's claim without reasonable ground in violation of the provisions of N.C. Gen. Stat. § 97-88.1?
 i. Has defendant Emerson Freight and/or defendant Phillip Emerson, defended plaintiff's claim without reasonable ground in violation of the provisions of N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following: *Page 5 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 31 years old. Plaintiff completed the tenth grade of high school and later obtained his GED in 1998. Plaintiff's previous work history includes employment as a farm laborer, a heavy laborer, and a long distance tractor/trailer operator.
2. Defendant CMH is a manufacturer of mobile or modular homes for sale to the public. CMH maintains a principal place of business at 1044 North Andy Griffith Parkway in Mount Airy, North Carolina. CMH also maintains retail places of business in other North Carolina cities and in Virginia. Defendant CMH had three or more employees at all relevant times and had workers' compensation coverage with defendant-carrier XL Insurance Company on June 27, 2007. 3. Defendant Phillip M. Emerson is in the business of moving and/or setting up and/or partial construction of manufactured/modular homes. Mr. Emerson does business as Emerson Freight or Emerson Mobile Home Movers. These businesses are actually operated by Mr. Emerson in his personal capacity.
4. Mr. Emerson's principal place of business was located at 869 Prison Camp Road, Dobson, North Carolina. This business was an enclosed building, housing supplies, tools and vehicles needed in Mr. Emerson's business.
5. Plaintiff had known Mr. Emerson for 25 years and plaintiff's father had worked for Mr. Emerson from 1991 to 1994. In mid-November 2006, Mr. Emerson employed plaintiff as a heavy laborer. Plaintiff's duties included frequent climbing, lifting of objects weighing up to 150 pounds, and operating different vehicles owned by Mr. Emerson. Plaintiff testified that from November 2006 through June 26, 2007, Mr. Emerson operated a crew of four men and *Page 6 
another crew of two men as needed. In June 2007 and on June 27, 2007, Mr. Emerson employed plaintiff, Dante Martinez, Joel Martinez, Aureo Nava, Misty Sapp, and Roger Spencer. Mr. Emerson paid all his employees in cash each week, usually on Friday, and did not withhold state or federal taxes from any of his employees' wages.
6. Mr. Emerson paid plaintiff $700.00 per week in cash from November 2006 through January 2007. In February 2007, Mr. Emerson increased plaintiff's weekly wages to $1,400.00 per week, when he promoted plaintiff to a working foreman over Mr. Emerson's other employees. Plaintiff continued to perform hard physical labor duties for Mr. Emerson. Plaintiff worked for Mr. Emerson eight to ten hours per day, seven days a week.
7. Mr. Emerson's employees used his Honda generator, impact gun, hammer drill, hammers, roof jacks, anchor machines, large steel cables, nail guns, wrenches, handsaw, electric saw, air compressor and bottle jacks.
8. Mr. Emerson furnished his employees his 1990 Volvo road tractor, International tandem axle road tractor, 20-ton tagalong trailer, 2005 Ford 350 truck, John Deere Tractor, 1500 Chevrolet pickup truck and Chevrolet Impala automobile.
9. Mr. Emerson exercised supervision and control over his employees. Mr. Emerson controlled the time his employees started and ended work; the location where each employee worked; the type of work, materials and equipment each employee used; the quality of work performed; the hiring and firing; and the amount of pay. Therefore, the Commission finds that plaintiff was an employee of Mr. Emerson, doing business as Emerson Freight.
10. On January 1, 2007, the State of North Carolina Licensing Board for General Contractors issued an unlimited general building/contracting license to defendant CMH. In early May 2007, CMH, from its Mount Airy location, sold a CMH Richfield Jamestown modular *Page 7 
home to Ramiro V. Guzman for the purchase price of $164,105.00. This modular home was about 2,000 square feet and was comprised of three sections. CMH agreed to deliver and install or construct Mr. Guzman's new modular home at 531 E. Devon Drive in Mount Airy, North Carolina.
11. On May 10, 2007, Surry County issued a building permit to CMH as the general contractor to set up Mr. Guzman's modular home. Pursuant to its agreement with Mr. Guzman to deliver and install or construct the new modular home, CMH, as the principal contractor, contracted with and paid subcontractors to perform moving, installation or construction work on the modular home in order to meet the State of North Carolina's residential building codes and Surry County and Mount Airy building codes.
12. In May or early June 2007, CMH contracted with Mr. Emerson to transport Mr. Guzman's new modular home from CMH's retail lot and to set up the modular home at 531 E. Devon Drive. CMH provided Mr. Emerson with its multi-page installation manual that provided in detail CMH's specific construction requirements concerning installation and/or construction of the modular home, which are standards CMH required Mr. Emerson to meet. CMH paid Mr. Emerson $6,750.00 to perform the delivery and set-up or installation work for the Guzman modular home. CMH sublet a contract to Mr. Emerson for the performance of work without requiring Mr. Emerson to provide CMH with a certificate of workers' compensation insurance coverage for his employees.
13. Mr. Emerson, doing business as Emerson Freight, had no workers' compensation insurance to cover plaintiff or any of his employees and did not qualify as a self-insured employer. Mr. Emerson had the ability and authority to bring Emerson Freight into compliance with N.C. Gen. Stat. § 97-93. *Page 7 
14. At about 7:00 a.m. on the morning of June 27, 2007, plaintiff and Mr. Emerson's other employees met with Mr. Emerson at the employer's Prison Camp Road location. Mr. Emerson directed plaintiff and several other employees to proceed to the Guzman modular home site and perform construction work there, while Mr. Emerson and two other employees went to a Virginia work site.
15. On June 27, 2007 at or about 8:00 a.m., plaintiff and the other employees began construction on the roof sections for the Guzman modular home. Mr. Emerson arranged for a crane that morning to help move the roof sections of the modular home. In late morning, plaintiff feared a rainstorm might damage the modular home. He telephoned Mr. Emerson, who authorized him to go to Lowe's Hardware in Mount Airy to purchase several rolls of felt paper to cover the exposed areas of the roof. Plaintiff and other Emerson employees worked through late morning and into the early afternoon using nail guns to attach the felt paper to the roof.
16. About 2:00 p.m. on June 27, 2007, plaintiff was sitting on the roof where the bottom edge of the roof met the top side of the modular home which was about ten feet above the ground. When plaintiff started to stand, his foot slipped. Plaintiff lost his balance and fell to the ground ten feet below, landing on his right upper extremity. Plaintiff severely injured his right wrist. The testimony of Dante Martinez, Misty Sapp, Roger Spencer, Ashley Heath, Aureo Nava, Joel Martinez and Lisa Tone all suggest that plaintiff often took pills that impaired his mental and/or physical faculties and had taken some pills on the day of his accident.
17. One of Mr. Emerson's employees transported plaintiff to the emergency room at Northern Hospital of Surry County in Mount Airy. Dr. Jason Stopyra treated plaintiff's open displaced fractured right wrist injuries with narcotic pain medicines, Morphine and Dilaudid, and an antibiotic, Clindamycin. All medications were administered intravenously. Dr. Stopyra *Page 9 
testified that on June 27, 2007, plaintiff did not appear to be impaired or under the influence of any impairing substance. On the evening of June 27, 2007, plaintiff's urine specimen test taken at Wake Forest University Baptist Medical Center, revealed the presence of controlled substances which had either been prescribed or administered by the medical providers. Dr. Stopyra stated that the prescription medications plaintiff was taking and the morphine plaintiff received intravenously more likely than not caused positive traces for the controlled substances in plaintiff's urine specimen.
18. The Commission gives little weight to the testimony of Dante Martinez, Misty Sapp, Roger Spencer, Ashley Heath, Aureo Nava, Joel Martinez and Lisa Toney suggesting that plaintiff took and subsequently became under the influence of some impairing controlled substance. The witnesses were unable to identify any pills plaintiff took on the date of the accident. Plaintiff testified that he had taken Xanax and Cymbalta, as prescribed by his physicians, on the date of the fall. The Commission assigns more weight to the opinion of Dr. Stopyra as to plaintiff's mental state on June 27, 2007.
19. Plaintiff was transported to Wake Forest University Baptist Medical Center in Winston-Salem where x-rays showed that as a result of the fall plaintiff sustained a comminuted and impacted fracture of his distal right radius, a fractured ulnar styloid, and a right scaphoid fracture. Plaintiff also had a laceration to his right wrist and moderate swelling in his right forearm. Plaintiff also developed pain, numbness and weakness in his right thumb and the first and second fingers of his right hand because the median nerve in plaintiff's arm was damaged from the fall.
20. On June 27 and June 28, 2007, plaintiff had open reduction internal fixation and bone reconstruction surgeries to his right wrist. *Page 10 
21. From July 2007 into 2008, plaintiff continued to suffer from constant severe right wrist/hand pain. Plaintiff had no health insurance and lacked the ability to pay for his treatment, including necessary pain medication. Consequently, plaintiff frequently sought pain relief treatment at hospital emergency rooms including Northern Hospital of Surry County, Hugh Chatham Memorial Hospital and Twin County Regional Hospital in Galax, Virginia.
22. On November 27, 2007, plaintiff sought treatment with orthopedic surgeon L. Andrew Koman. Dr. Koman reviewed x-rays which revealed that plaintiff's wrist bone fractures were not healing. Dr. Koman prescribed a bone stimulator. A cold stress test revealed plaintiff's blood flow to his right hand was impaired. This impaired blood flow condition was a complication of his injuries from the fall.
23. By the fall of 2007, plaintiff had developed chronic regional pain syndrome in his right upper extremity as a result of and as a complication of his injuries from his June 27, 2007 fall. Plaintiff experienced constant severe burning pain in his right hand and fingers, cold sensations and sensitivity to cold temperatures in his hand and fingers, insomnia, weakness, and swelling with color changes in his hand and fingers, depression and an inability to use his right hand to perform any work activities. Plaintiff was unable to flex or extend his right wrist except to a very limited degree. Plaintiff also sustained permanent severe injury from the fall to his right median nerve which controls plaintiff's ability to use his thumb, index and second fingers. Due to the injury to the median nerve, plaintiff lost feeling in and has very limited ability to use his right thumb, index and second fingers of his right hand.
24. On January 15, 2008, Dr. Koman performed a second surgery on plaintiff's right wrist in an effort to repair damage to plaintiff's median nerve and improve his range of motion. *Page 11 
Dr. Koman removed some hardware from plaintiff's wrist and inserted a pain catheter. The surgery provided some improvement.
25. From March 9-12, 2008, plaintiff was readmitted to the hospital for treatment for his severe pain condition. On March 20, 2008, plaintiff treated with orthopedist Dr. Gary Poehling who recommended further right hand surgery. On March 25, 2008, Dr. Poehling performed surgery on plaintiff's right wrist. Dr. Poehling found dense scarring in the tissue covering the nerves in plaintiff's wrist. Dr. Poehling testified to a reasonable degree of medical certainty and the Commission finds that plaintiff's complaints of severe pain in his right wrist and hand are a result of his right wrist injury on June 27, 2007. Dr. Poehling also testified to a reasonable degree of medical certainty and the Commission finds that plaintiff developed complex regional pain syndrome as a result of his right wrist injury of June 27, 2007 and that plaintiff, from a functional standpoint, would be left with his left hand as his primary functional hand. From April 14-17, 2008, plaintiff was readmitted to the hospital for further treatment of his severe pain condition.
26. As a result of chronic severe pain in plaintiff's right upper extremity, plaintiff was unable to work in any employment from June 27, 2007 through May 20, 2008.
27. On May 21, 2008, plaintiff began a self-employment trial return to work effort in which he estimated the cost for residential roof replacements and hired two employees to perform the roof replacement work. This trial return to work effort became unsuccessful by September 10, 2008 due to plaintiff's injuries from the fall. From May 21 through September 10, 2008, plaintiff earned a total profit of $2,871.00.
28. From September 11, 2008 through October 15, 2008, plaintiff sought employment but was unsuccessful. On October 16, 2008, plaintiff began a second trial return to work effort at *Page 12 
Kritcher Brothers Farms of Deep Gap, North Carolina, in which plaintiff used his left hand to operate farm machinery to help feed cattle. Plaintiff earned $675.00 per week in this job.
29. At the hearing before the Deputy Commissioner on December 16, 2008, plaintiff was still working at Kritcher Brothers but continued to suffer from constant severe pain and weakness in his upper right extremity.
30. Defendant Emerson Freight has defended plaintiff's claim without reasonable ground.
31. Although defendants CMH and its carrier XL Insurance initially defended plaintiff's claim without reasonable ground, on April 20, 2009, defendants filed a Form 60, Employer's Admission of Employee's Right to Compensation, and since that time have paid indemnity and medical compensation to plaintiff. Therefore, under these circumstances the Full Commission finds that an award of attorney's fees under N.C. Gen. Stat. § 97-88.1 is not appropriate as to defendants CMH and XL Insurance.
32. From August 30-September 6, 2007, OSHA performed an investigation of defendant Emerson Freight after plaintiff's compensable injury by accident. OSHA cited defendant Emerson Freight for three violations of OSHA regulations, all of which were characterized as "serious." The OSHA citation penalized defendant Emerson Freight for its failure to ensure an adequate supply of potable water at the job site, to provide protective helmets to employees, to protect employees with guardrail systems, safety net systems, or personal fall arrest systems, or to have a written certification record of fall protection training of employees. However, the OSHA report itself is not a part of the evidence of record and based on the citations alone the Commission has insufficient evidence by which to find as fact that plaintiff's *Page 13 
injury by accident was caused by the willful failure of Emerson Freight to comply with these OSHA regulations.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The Commission has jurisdiction over the parties and the subject matter of this case. N.C. Gen. Stat. § 97-2(1), (2).
2. On June 27, 2007, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with Emerson Freight when he fell from a roof, landing ten feet below, thereby injuring his right wrist. N.C. Gen. Stat. § 97-2(6).
3. Defendant Emerson Freight was a duly qualified employer who regularly employed three or more employees on June 27, 2007, and was subject to the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(1). On June 27, 2007, an employment relationship existed between plaintiff and defendant Emerson Freight. N.C. Gen. Stat. § 97-2.
4. On June 27, 2007, defendant CMH was the general or principal contractor for the construction job on which plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with Emerson Freight. Defendant CMH sublet a contract to Emerson Freight for the performance of work without requiring a certificate of proof of workers' compensation insurance coverage for its employees in violation of N.C. Gen. Stat. § 97-19.
5. Therefore, on June 27, 2007, defendant CMH became the statutory employer of plaintiff. N.C. Gen. Stat. § 97-19. Pursuant to N.C. Gen. Stat. § 97-19, defendant CMH may *Page 14 
recover the amounts it paid plaintiff from defendant Emerson Freight and Phillip Emerson. Id. Defendants Emerson Freight and Philip Emerson, individually, are prohibited from concealing and/or disposing of real and personal property. Defendants Emerson Freight and Philip Emerson, individually, shall surrender sufficient property and/or capital to reimburse CMH.
6. On June 27, 2007, plaintiff's average weekly wage was $1,400.00, yielding a maximum compensation rate of $754.00. N.C. Gen. Stat. § 97-2(5).
7. At the time of plaintiff's compensable injury by accident, plaintiff was not under the influence of any controlled substance or intoxicating beverage such that he lost normal control of his bodily or mental faculties, or both, to such an extent that there was an appreciable impairment of either or both of these faculties at the time of the injury. N.C. Gen. Stat. § 97-12.
8. As a result of plaintiff's compensable injuries, plaintiff is entitled to have defendant CMH and its carrier XL Insurance Company and defendant Emerson Freight pay to plaintiff temporary total disability compensation benefits from July 27, 2007 through May 20, 2008 and from September 11, through October 15, 2008. N.C. Gen. Stat. § 97-29. Plaintiff's trial return to work effort as a self-employed roofer in late May through early September 2008 became unsuccessful on September 10, 2008. N.C. Gen. Stat. § 97-32.1. Plaintiff's trial return to work beginning in October 2008 at Kritcher Brothers Farm through at least the date of the hearing before the Deputy Commissioner was part of a N.C. Gen. Stat. § 97-32.1 trial return to work effort. N.C. Gen. Stat. § 97-32.1.
9. As a result of plaintiff's compensable injury, plaintiff was partially disabled from employment and is entitled to have defendant CMH and its carrier XL Insurance Company and defendant Emerson Freight pay to plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between his average weekly wages before and the wages he was *Page 15 
able to earn after the compensable injury from May 21, 2008 through September 10, 2008 and from October 16, 2008 and thereafter, subject to the 300-week statutory limitation, or until further Order of the Commission. N.C. Gen. Stat. § 97-30.
10. As a result of plaintiff's compensable injury, plaintiff is entitled to have defendants CMH and its carrier XL Insurance and Emerson Freight pay for all reasonably related present and future medical treatment and allowable expenses resulting from his compensable injury by accident to the extent the treatment or medication reasonably tends to effect a cure, provide relief, or lessen plaintiff's period of disability. Dr. Gary G. Poehling is approved as plaintiff's primary treating physician.
11. Any employer required to secure the payment of compensation who refuses or neglects to secure compensation shall be punished by a penalty of $1.00 for each employee, but not less than $50.00 nor more than $100.00 for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
12. Any person who with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to 100% of the amount of any compensation due the employers' employees injured during the time the employer failed to comply with N.C. Gen Stat. §§ 97-93; 97-94(d). As owner of Emerson Freight, Philip Emerson had the ability and authority to bring the business into compliance and neglected to secure compensation for said business. *Page 15 
13. Defendant Emerson Freight has defended plaintiff's claim without reasonable ground and may be assessed the whole cost of the proceedings, including reasonable attorney's fees. N.C. Gen. Stat. § 97-88.1.
14. Plaintiff is not entitled to a 10% increase in the compensation awarded above. N.C. Gen. Stat. § 97-12.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants CMH Homes, Inc., and its carrier XL Insurance Company and defendants Emerson Freight Systems, Inc., and Phillip Emerson shall pay plaintiff temporary total disability compensation at the rate of $754.00 per week from June 27, 2007 through May 20, 2008 and from September 11, 2008 through October 15, 2008.
2. Defendants CMH Homes, Inc., and its carrier XL Insurance Company and defendants Emerson Freight Systems, Inc., and Phillip Emerson shall pay plaintiff temporary partial disability benefits at the rate of two thirds of the difference between his average weekly wage prior to the injury and the wages he earned after the injury from May 21, 2008 through September 10, 2008 and from October 16, 2008 and continuing, subject to the 300-week limitation of N.C. Gen. Stat. § 97-30 or until further order of the Industrial Commission.
3. Defendants CMH Homes, Inc. and its carrier XL Insurance Company and defendants Emerson Freight Systems, Inc., and Phillip Emerson shall pay for all past and future medical expenses incurred by plaintiff or to be incurred by plaintiff as a result of his *Page 17 
compensable injuries. Dr. Gary G. Poehling is approved as plaintiff's primary treating physician.
4. Plaintiff is HEREBY ORDERED to cooperate with reasonable and necessary medical treatment and evaluation recommended by his treating physicians.
5. Defendants Emerson Freight Systems, Inc., and Phillip Emerson are ordered to pay the State of North Carolina penalties in the sum of $11,200.00 which represents $50.00 per day (224 days) from November 15, 2006 to June 27, 2007, for the failure to secure workers' compensation coverage in accordance with the North Carolina Workers' Compensation Act.
6. An additional penalty in the amount of 100% of the amount of compensation due to plaintiff in this matter is assessed against Philip Emerson individually, for failing to comply with N.C. Gen. Stat. § 97-93.
7. A reasonable attorney's fee in the amount of 25% of the compensation benefits awarded to plaintiff is hereby approved for plaintiff's counsel.
8. Defendants Emerson Freight Systems, Inc., and Phillip Emerson shall pay plaintiff's attorney's fees for an unreasonable defense of this claim once plaintiff's counsel has submitted an affidavit of his hours. Defendants Emerson Freight Systems, Inc., and Philip Emerson, individually, are prohibited from concealing and/or disposing of real and personal property. Defendants Emerson Freight Systems, Inc., and Philip Emerson, individually, shall surrender sufficient property and/or capital to reimburse CMH Homes, Inc.
9. Defendants shall pay all costs associated with this matter.
This 17th day of December, 2009.
 S/___________________ *Page 18 
LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY LEE McDONALD COMMISSIONER